PRENDERGAST v. PARCEL TRANSFER CO., Appellant

---

(July 19, 1926.   Opinion and Decree.)
(August 16, 1926.   Rehearing Refused.)

---

(*Syllabus by the Court*)

1. Louisiana Digest—Warehousemen and Warehouse Receipts—Par. 6.

The keeper of a garage may be liable for any damage to an automobile in his custody; but deteriorations, not effected by any act of his, are the loss of the owner.

Appeal from Civil District Court.   Hon. M. M. Boatner, Judge.

Action by George Prendergast against Parcel Transfer Co.

There was judgment for plaintiff and defendant appealed.

Judgment reversed.

E. Vidrine, and W. R. Kinsella, of New Orleans, attorneys for plaintiff, appellee.

C. I. Denechaud and Claude L. Johnson, of New Orleans, attorneys for defendant, appellant.

CLAIBORNE, J.   This is a damage suit for alleged injury done to an automobile.

The plaintiff alleged that on March 26, 1921, he purchased an automobile for $600; that on June 8, 1921, while his automobile was garaged with the defendant, the motor thereof was operated without oil or water by an employee of said defendant and thereby much injured; that the cost of necessary repairs would be $170; that the defendant company admitted its liability and retained possession of the car for making the repairs which it has not made; that while retaining possession of said car the defendant failed to take proper care of the car, which by reason thereof has suffered a further damage as follows:

Replacing battery _____$ 30.00
Replacing tires and tubes_____ 119.40
Repairs to top and body_____  40.00

Making a total of_____$189.40

That after the above repairs are made the car will not be worth more than $300, causing plaintiff a further loss of $300 owing to defendant's delay and refusal to make the necessary repairs.

Plaintiff claims judgment for six hundred and fifty-nine 40-100 dollars, value of necessary repairs, or for $600 value of his car at the time he placed it in garage with defendant.

The defendant admitted that it held plaintiff's car in garage, and that its employee, operated the motor of said car; and caused it some damage; that it made certain repairs to the car to the amount of $244 which restored it to its former condition; that plaintiff could have withdrawn the car from the garage at any time; that the car has been stored in defendant's garage since June, 1921, at a charge of $5 per month or $55 which defendant claims in reconvention.

The defendant denied all the other allegations of the petition.

There was judgment for plaintiff for $600 subject to a credit of $40.

The reconventional demand was rejected.

A new trial was refused.

The defendant has appealed.

The evidence is that the plaintiff, who is a machinist, bought a secondhand car from E. P. Toups in the latter part of 1919, or the early part of 1920; it was then in running condition. Toups himself had bought it as a secondhand car from Sam Broussard; in the early part of 1921, plaintiff stored his car with the defendant and obtained permission to use a portion of the garage to make repairs to his car; one witness testifies that the car was a very old car and was in very bad condition; that on one occasion the plaintiff told him that "it was a bunch of junk". Plaintiff admitted he said that; that some time in June, 1921, after making repairs to his car, the plaintiff drained the water from the radiator and the oil from the crank case and rested his car near the vulcanizing plant. The plaintiff testifies that he "told the garage man not to let anyone touch it because it was dry and had no lubricating oil in it". No garage man was produced to corroborate that testimony. While the car was in that position, one of the workmen about the garage, James Barr, having use for the vulcanizing plant, got into the car and started the engine racing for the purpose of changing the position of the car which was in the way and ran it for four or five minutes; Barr swears that no one warned him that the water and the oil had been drained from the car; at that moment there was a great noise and the connecting rods came through the crank case and much damage was done.

The defendant company expressed its willingness to repair the damage done by the act of their employee. The defendant is not in the repair business, they are in the transfer business; they secured the services of a mechanic, George Bozant, to re-assemble the motor and put it in shape. The plaintiff objected to this mechanic stating that he did not think he was competent.

The defendant then resorted to another mechanic, Boehn. He did not please the plaintiff either. Then the defendant offered to employ James Jurgens an automobile engineer of 21 years' experience, for 14 years operating an automobile repair shop for himself, and inspector and appraiser for eleven insurance companies.

The plaintiff accepted Mr. Jurgens and the car was left with him with instructions "that the work was to be done to the satisfaction of Mr. Prendergrast insofar as the damage done to the machine in our garage was concerned".

The defendant spent, in repairs upon the car, $244.18. Still the plaintiff was not

satsified. He wanted the cylinders rebored and new pistons, which defendant refused to do as this necessity did not arise from the accident but from long usage of the car. Jurgens testified that he made the repairs and delivered the car to plaintiff in "running, satisfactory condition for a car of that value". But the plaintiff was not satisfied. He returned the car to the defendant; he left it there and later filed this suit.

The defendant was the custodian of the car; it was on deposit with it, and in the language of Art. C. C., 2937, they were "bound to use the same diligence in preserving the car that they used in preserving their own property." By consent the car was sold for $40 which was paid to plaintiff.

If the car was injured or deteriorated in value for want of that diligence or care the defendant is liable. But it is only liable for damages caused by want of care on its part. It is not liable for deterioration caused by time.

C. C. 2945 (2916) "The depositary is only bound to restore the thing in the state in which it is at the moment of restitution. Deteriorations, not effected by any act of his, are the loss of the depositor."

It is doubtful in the first place whether defendant was liable at all.

The act of James Barr in starting the motor car to move the car from its place was in the usual course of business and would not have been negligent had not the water and oil been drained from the car.

The plaintiff felt as much for he says that he "told the garage man not to let anyone touch it because it was dry and had no lubricating oil in it".

He did not give the name of the garage man, and Barr, who moved the car, says that he was not warned by anyone.

But assuming that defendant is liable its liability is well defined by Adam Lorch, their secretary-treasurer and manager; "so far as the damage done to the machine in our garage was concerned".

The testimony of James Jurgens, a disinterested witness, and the bill for the repairs made by defendant, establish beyond a doubt that all the damages caused to the car was repaired as far as possible for a car of that age, and that much more was done.

The plaintiff showed the condition of the car by the testimony of R. F. Viosca, an automobile mechanic. He examined the car in April, 1922, ten months after the accident, and calculated the necessary repairs at $394. Included in those repairs are the cost of tires, dead battery and motor and rotten woodwork and paint, and rusty metal. None of these damages were caused by the accident. The car was in a shed, and plaintiff knew it, and it remained there without any protection on his part. The motor and battery were dead for laying up so long, and the tires had rotted from standing in the same position so long, "even brand new tires left in a stock after a year and a half or two years, it won't last any time at all" said plaintiff's witness, Viosca. Viosca said:

"Q. What would you estimate the value of the car, after those repairs that you figured on would have been done; what would that automobile be worth on the market?

"A. I hardly think it would have brought the money that would be put into the thing by way of repairs."

After describing the condition of the car when he undertook to repair it Jurgens, valued it at $200.

"Q. Now, Mr. Jurgens, from your experience as a mechanic and automobile engineer, if an engine such as this had been

run for four or five minutes after the oil and water had been drained out of it would it have caused the damage as you found in the crank case and connecting rods?

"A. Not unless the car was driven on a highway in high gear, the full strain of the car, in my opinion, takes an average of 30 minutes even after oil is drained from the crank case and water is removed, the motor would freeze, by that I mean the pistons would become so hot and expand so much that it would cause the motor to stick and stop, commonly known as freeze.

"Q. Would you say it would have been possible for the damage to be caused such as was caused, if this engine at the time it was run was in good mechanical condition?

"A. It would be impossible.

"Q. If all the connecting rods, bearings, and bolts had been tight and in good condition, would it have been possible they did if this motor was run say four or five minutes?

"A. It would be impossible."

The speedometer on the car registered 23,000 miles.

If plaintiff was dissatisfied with the repairs made by the defendant, it was his duty to have had the repairs made himself, and to have charged the cost of them to the defendant. He could have taken the car at any time. He had no right to abandon the car as a total loss and then charge the defendant with what he had paid for it a year and a half previously. Silverman vs. St. Louis I. M. & S. Ry., 51 La. Ann. 1785, 26 South. 447.

We have arrived at the conclusion that the defendant was not liable for the act of one of defendant's employees in racing the motor of the automobile under the circumstances of this case. But that even if defendant was liable, he caused to be made all repairs which had become necessary by the act of the employee; that all the damages that subsequently developed upon the car was brought about by the failure of the plaintiff to resume possession of his car and to make the repairs himself and thus to allow the car to remain idle, and in that manner to deteriorate.

It is therefore ordered that the judgment appealed from be reversed and set aside, and it is now ordered that there be judgment rejecting plaintiff's demand at his cost ·in both courts.